## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

KARA GEORGE, TRINDA MARTIN,
BRENNAN POWERS, and
ELIZABETH STOUT,

                                         Case No.

            Plaintiffs,

v.                                      Hon.

ORGAN PROCUREMENT AGENCY OF
MICHIGAN d/b/a GIFT OF LIFE MICHIGAN,

            Defendant.

---

Noah S. Hurwitz (P74063)
Grant M. Vlahopoulos (P85633)
Kara F. Krause (P85487)
Brendan J. Childress (P85638)
HURWITZ LAW PLLC
*Attorneys for Plaintiff*
617 Detroit St., STE. 125
Ann Arbor, MI 48104
(844) 847-9489
noah@hurwitzlaw.com
grant@hurwitzlaw.com
kara@hurwitzlaw.com
brendan@hurwitzlaw.com

---

There is no other pending or resolved civil action arising out
of this transaction or occurrence alleged in the Complaint.

## <u>COMPLAINT AND JURY DEMAND</u>

Plaintiffs Kara George, Trinda Martin, Brennan Powers, and Elizabeth Stout (collectively, "Plaintiffs"), by and through their attorneys, HURWITZ LAW PLLC, state the following for their Complaint and Jury Demand against Defendant Organ Procurement Agency of Michigan d/b/a Gift of Life Michigan ("Defendant'):

**INTRODUCTION**

1.     There is no "pandemic exception" to the protections afforded by Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e.  Defendant did not understand its legal obligations when it blanketly terminated four employees who submitted religious and medical accommodations to the COVID-19 vaccine.  Instead of engaging with its employees in the spirit of "bilateral cooperation" that is required by the law, Defendant imposed a strict vaccine mandate that allowed for no reasonable accommodations.  Accordingly, this action is meant to remedy Defendant's unlawful discrimination against employees who requested religious and/or medical accommodations from Defendant's vaccine mandate.

**PARTIES, JURISDICTION, AND VENUE**

2.     Plaintiff Kara George ("Ms. George") was a Hospital Development Advocate for Defendant.  Ms. George submitted a religious accommodation request on August 9, 2021, to which Defendant responded by terminating Ms. George on October 25, 2021, after temporarily placing her on an involuntary indefinite unpaid leave of absence.  Ms. George is a citizen and resident of Michigan, and lives in Pewamo, Michigan.  She filed an EEOC Charge of Discrimination alleging religious discrimination and retaliation on October 6, 2021.

3.     Plaintiff Trinda Martin ("Ms. Martin") was a Family Services Coordinator for Defendant.  Ms. Martin submitted a religious accommodation request on August 10, 2021.  Ms. Martin is a citizen and resident of Michigan, and lives in Bath, Michigan.  She filed an EEOC Charge of Discrimination alleging religious discrimination and retaliation on October 7, 2021.  Ms. Martin was terminated on or around November 24, 2021.

4.      Plaintiff Brennan Powers ("Mr. Powers") was a Referral Responder for Defendant. Mr. Powers submitted a religious accommodation request on July 19, 2021, to which Defendant responded by terminating Mr. Powers on October 25, 2021, after temporarily placing him on an involuntary indefinite unpaid leave of absence.  Mr. Powers is a citizen and resident of Michigan, and lives in Bath, Michigan.  He filed an EEOC Charge of Discrimination alleging religious discrimination and retaliation on October 6, 2021.

5.      Plaintiff Elizabeth Stout ("Ms. Stout") was a Donation Coordinator II for Defendant.  Ms. Stout first requested a medical accommodation form on July 14, 2021, but later submitted a religious exemption request on August 4, 2021, to which Defendant responded by terminating Ms. Stout on October 25, 2021, after temporarily placing her on an involuntary indefinite unpaid leave of absence.   Ms. Stout is a citizen and resident of Michigan, and lives in Grand Ledge, Michigan.  She filed an EEOC Charge of Discrimination alleging religious discrimination and retaliation on October 6, 2021.

6.      All Plaintiffs received their right to sue letters from the EEOC.

7.      Defendant Organ Procurement Agency of Michigan, d/b/a Gift of Life Michigan is a Michigan domestic nonprofit corporation with its principal place of business in Ann Arbor, Michigan, and Defendant regularly operates its services of organ and tissue donation across various hospitals in the State of Michigan.

8.      The Western District of Michigan has jurisdiction over the Title VII claims pursuant to 29 U.S.C. § 1331.

9.      Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events complained of herein occurred in this District and Division.

**FACTUAL ALLEGATIONS**

3

**Defendant's Response to COVID-19 and Mandatory Vaccine Policy**

10.     In Spring 2020, the novel COVID-19 virus spread rapidly around the world.

11.     However, Defendant's organ and tissue donation services never ceased during the COVID-19 pandemic.

12.     To limit the spread of COVID-19, Defendant implemented mitigation procedures for its workforce, including requiring employees to wear masks or other personal protective equipment ("PPE"), maintain distance from others, and participate in temperature checks.

13.     In or about December 2020, Defendant began inquiring into the vaccination status of its employees.  An email from Defendant's Manager of Organ Services Rita Erickson on December 21, 2020, provides: "[w]hen you complete your COVID-19 vaccine, please email me. I only need to know when you complete the 2-step process.  If you are choosing not to get the vaccine at this time (which we all know it is *not* mandatory), please email me personally and let me know."

14.     Defendant collected names of unvaccinated employees despite Ms. Erickson acknowledging that receiving a COVID-19 vaccine was mandatory and/or a condition of employment.

15.     At that time, the Food and Drug Administration ("FDA") had not fully approved *any* COVID-19 vaccine.

16.     The FDA granted full approval for the Pfizer COVID-19 vaccine on August 23, 2021.

17.     The FDA granted full approval for the Moderna COVID-19 vaccine on January 31, 2022.

18.     On December 29, 2020, Ms. Erickson sent an email requesting employees to disclose the dates of their first and second doses of a COVID-19 vaccine.

19.     On January 4, 2021, Ms. Erickson sent another email requesting employees to disclose the date(s) they receive a COVID-19 vaccine.

20.     On January 7, 2021, Defendant's Chief Executive Officer Dorrie Dills sent an email announcing that Defendant secured vaccinations for "**ALL STAFF** at Gift of Life Michigan who wishes to be vaccinated."   The email continued, "[f]or those of you who have concerns or hesitations about being vaccinated, we are working on an educational session with Dr. Punch, our medical director."

21.     Defendant therefore sought to "educate" employees with religious "concerns or hesitations about being vaccinated."

22.     On January 12, 2021, Ms. Erickson sent an email to unvaccinated employees, stating: "If you are getting this email, it is because you filled out the organizational survey for COVID Vaccinations, and it is now time for you (and your staff) to schedule your first shots of the COVID vaccine."

23.     Ms. Erickson's January 12, 2021 email did not inform unvaccinated employees that they were eligible for religious or medical exemptions from the vaccine.

24.     On February 17, 2021, Defendant's Vice President, Regulatory Compliance and General Counsel, Jeffery Wisniewski, emailed employees that appropriate safety measures could still be followed regardless of vaccination status.  He stated, "[p]lease remember to continue with all safety, masking and distancing requirements, whether or not you have received the COVID-19 vaccine."

25.     On March 30, 2021, Mr. Wisniewski emailed unvaccinated employees requesting an update on their vaccination status.  Again, he noted that appropriate safety measures could still be followed regardless of vaccination status.

26.     On July 1, 2021, Defendant announced it would impose a mandatory COVID-19 vaccination policy for all employees beginning September 10, 2021.  The announcement stated that Defendant would accommodate "an approved exemption."

27.     The mandate was for the purposes of "eliminating this devastating virus in our community" and to "operate fully in our donor hospitals."

28.     Ms. Dills further represented that the Company would "not require vaccination of some employees but not others."

29.     On July 21, 2021, Manager of Talent Operations Meghan Hudson emailed employees, "[y]ou are receiving this email because we have not (i) received a photo of your vaccination card as described below at vaccine@golm.org; (ii) otherwise verified your vaccination status; or (iii) received an application for an exemption/accommodation."

30.     In August 2021, Ms. Dills sent a "CEO Newsletter" stating that Defendant was instituting a policy that blanketly denied employees religious or medical accommodations.  It provided:

> I want to recognize that some teams are seeing or will see turnover because of this requirement, which goes into effect Sept. 10, 2021. I respect everyone's individual rights, one of which is not to be vaccinated. **Since that is not an option at Gift of Life Michigan, we will be parting ways with some team members.** We are working very hard to fill those vacancies and will bring in temporary help until we are back to normal staffing levels.

31.     Ms. Dills stated in the letter, "[i]t would be impossible for us to continue to do our work effectively without a fully vaccinated workforce."

32.     Defendant's vaccination mandate does not provide any alternative for periodic testing, mask wearing, social distancing, even for employees who have already had COVID-19 and still enjoy natural immunity from the disease.

33.     Defendant has never mandated other vaccinations as a requirement for employment in in the past.

34.     Defendant does not obligate the contractors it hires to perform daily cleaning in Defendant's building to take the COVID-19 vaccine, which includes the companies Populist Cleaning, Co. and Corporate Cleaning.

**Defendant's COVID-19 Preparedness and Response Plan**

35.     On July 1, 2021, the same day it announced mandatory vaccines for all employees, Defendant implemented its newest COVID-19 "Preparedness and Response Plan" (the "Plan").

36.     The Plan was implemented "[i]n order to protect the health and safety of its employees . . .."

37.     Defendant established the following risk classifications by job location: high risk employees work in laboratory or Surgical Centers (inclusive of Donor Care Units, Recovery Rooms, and Changing Rooms); medium risk employees work in donor hospitals, main entry/hallways, and the warehouse; low risk employees work in administrative offices, clinical offices, third floor area, the Tissue Center, and volunteer areas.

38.     Defendant's Plan outlined protocols for protective equipment, stating:

i.      All staff are required to utilize PPE inside of the facility and at outside hospitals as directed. [Gift of Life Michigan] will provide employees with PPE at no cost as necessary for performance of job functions; and

ii.     All staff are required to utilize appropriate PPE, including masks, face shield/eye protection and isolation gowns, as provided and

7

directed by [Gift of life Michigan] to protect from exposure during aerosol-generating procedures.

39.     Although Defendant's Plan expressly confirms it can provide PPE to all employees,

Plaintiffs were informed that PPE was not a reasonable accommodation.

40.     Plaintiffs' vaccination mandate did not account for employee risk classifications.

41.     Defendant's Plan also instructs on physical distancing measures:

All employees, except those fully vaccinated per CDC guidelines, are to avoid sharing offices, desks, telephones, or other tools/equipment, and are to perform their work in such a way as to avoid coming within six feet of other individuals. When impossible due to job duties or physical limitations, (e.g., shared workstations), employees should use provided PPE, maintaining as much distance as possible under the circumstances, as well as disinfectant on all commonly used surfaces at the beginning and conclusion of each shift.

42.     Although Defendant's Plan describes social distancing measures for all employees,

Plaintiffs were informed that physical distancing was not a reasonable accommodation.

43.     Defendant's Plan also required employees to submit to daily health screenings:

Everyone entering the facility (including employees, vendors and visitors) will be required to complete a health screening as described herein prior to entry. Failure or refusal to complete the screening requirements are cause for refusal of entry and/or removal. The health screening will including the following: personal identification, questionnaire including verification of no symptoms, positive COVID-19 test or confirmed COVID-19 diagnosis. Anyone with a positive COVID-19 test, confirmed COVID-19 diagnosis, or exhibiting symptoms of COVID-19 will not be permitted to enter the facility. Health screening records shall be maintained for a period of 6 months.

44.     Defendant's Plan states that an employee who tests positive for COVID-19, but is

asymptomatic, "may return to work as directed by their health care provider, or at least after 10

days have passed since the date of their first positive viral diagnostic test."

**Plaintiffs' Religious Accommodation Requests**

45.     Defendant's Request for Religious Exemption/Accommodation form contained merely two questions for employees to answer: (1) "Please explain below why you are requesting an Exemption/Accommodation;" and (2) "In some cases, GOLM will need to obtain additional information and/or documentation about your religious practice(s) or belief(s).  We may need to discuss the nature of your religious belief(s), practice(s) and accommodations with your religion's spiritual leader (if applicable) or religious scholars to address your request for an exception.  If requested, can you provide documentation to support your belief(s) and need for an accommodation?"

46.     All Plaintiffs answered Question 2 by indicating they could submit documentation to support their belief(s) and need for an accommodation from Defendant's Vaccine Mandate.

47.     All Plaintiffs submitted religious accommodations requests before the required date of September 10, 2021.

48.     Plaintiff Kara George submitted a religious accommodation request on August 9, 2021, wherein she explained her sincerely held belief rooted in Christianity that her body is a temple of the Holy Spirit of God and taking the COVID-19 vaccine violated her beliefs.

49.     Plaintiff Trinda Martin submitted a religious accommodation request on August 10, 2021, stating, in pertinent part:

> I believe God formed us in His image and we are a living temple. As a living temple, it is my God given responsibility to protect my body from any harmful and unclean foods, substances, and injections.  That is a belief that I observe in my choice of diet and other health practices.  The Bible also teaches that life is given by God at the moment of conception and He knew us before we were formed in the womb.  Therefore, I must not support abortions and am not to participate in any activity in which a human fetus is aborted and used in attempts to prevent various diseases. Documentation and/or admission by Pfizer, Moderna, and Johnson & Johnson, all indicate using cell lines derived from aborted human beings in the manufacture and testing of the vaccine.  It is my sincere

belief that for me to benefit from the murder of innocent human life is immoral and a sin.  Even if the safety and efficacy of the vaccines were certain and the danger of the disease great, I cannot in good conscience receive a COVID-19 vaccine.

50.     Plaintiff Brennan Powers submitted a religious accommodation request on July 19, 2021, stating, in pertinent part:

I am a Christian and follower of Jesus Christ.  Because of my Christianity, and my faith in Jesus Christ as my lord and savior, I possess certain religious and spiritual convictions about my mind, body and soul based on my understanding of God.  My faith has strengthened throughout the pandemic, especially after testing positive for COVID-19 in March.  I leaned on God through my illness and was protected.  Through prayer and review of science, facts and data, I am led to the request for COVID-19 vaccine exemption for religious reasons.

51.     Plaintiff Elizabeth Stout submitted a religious exemption request on August 4, 2021, stating, in pertinent part:

I Elizabeth Stout being a follower and believer in the Lord Jesus Christ will be abstaining from the COVID vaccine… At the age of five I received Jesus Christ as my personal Savior.  I am a believer in the written word of the Lord, the bible, and it has guided me throughout my life…. Every day since COVID started in March of 2020 in the US, I have prayed to my Lord Jesus Christ to protect me and keep me healthy.

52.     On August 27, 2021, Defendant distributed Plaintiffs identical responses to their accommodation requests, stating that Defendant had failed to make a "determination at this point as to whether you have established a sincerely held religious belief or practice that supports your objection to the vaccination," and then paradoxically stated, "your request for a Religious exemption is nevertheless granted."

53.     Defendant's initial granting of Plaintiffs' accommodation requests was subterfuge.

54.     Rather than truly granting Plaintiffs' accommodation requests, Defendant stated, "[w]e have therefore **decided to accommodate you by placing you on an unpaid leave of absence** beginning September 11, 2021."

55.     Involuntary indefinite unpaid leave is not an accommodation; it is the functional equivalent of termination.

56.     "Being placed on indefinite unpaid leave because your employer doesn't like your religious beliefs is obviously an adverse employment action and an actionable claim under Title VII of the Civil Rights Act of 1964.  And you've obviously suffered irreparable injury when you're forced to violate your faith in order to get your job back." *Sambrano v. United Airlines, Incorporate*, No. 21-11159, 2022 WL 3572372, at *2 (5th Cir. Aug. 18, 2022) (Ho, J. concurring).

57.     The August 27, 2021 determination letters also indicates that Plaintiffs' insurance benefits would cease after September 30, 2021, and that Defendant would distribute information on the Consolidated Omnibus Budget Reconciliation Act ("COBRA").  Hence, Plaintiffs had been terminated.

58.     Defendant's explanation for the decision was that "all requests were reviewed on an individual basis."

59.     Defendant's religious animus is demonstrated by the fact that it granted unvaccinated Huron Valley Ambulance workers an accommodation to work on-site with an N-95 mask but denied Plaintiffs the same accommodation.

60.     Defendant's religious animus is further demonstrated by the fact that Defendant provided medical exemptions, including to an employee who was pregnant.

61.     If Defendant were concerned about potential outbreaks caused by unvaccinated people on Defendant's premises, Defendant would not exempt pregnant employees even though

the Center for Disease Control and Prevention ("CDC") strongly recommends COVID-19 vaccination during pregnancy.

62.     Statewide hospital systems are granting religious accommodations to their own employees and allowing access to unvaccinated members of the public.

63.     Defendant does not require patients who acquire organ and tissue donations to be vaccinated, even though these individuals interact with Defendant's staff.

64.     On September 3, 2021, Ms. Hudson stated:

> Regarding employees for whom gaining access to hospitals and facilities we serve is an essential function of their jobs, it is important to note that Gift of Life Michigan serves over 170 such facilities. While any one of those facilities that deny access to unvaccinated individuals may allow exemptions and certain accommodations under certain circumstances, there is not a singular accommodation that would permit access to all such facilities at any given point in time, particularly if not every facility we serve has the same requirements with respect to the unvaccinated and to the extent those requirements may change over time. Our inability to properly service these facilities **by not having a fully vaccinated staff puts us in a position of not being able to fulfil our Mission**.

65.     Defendant is an Organ Procurement Organization ("OPO").

66.     Ms. Hudson misrepresents the relationship between Organ Procurement Organizations ("OPOs") and hospital facilities.

67.     The Association of Organ Procurement Organizations ("AOPO") and regulations from the Center for Medicare and Medicaid Services ("CMS") instruct that OPOs are not vendors, business associates, or contractor service provides of hospitals.

68.     Standard credentialing programs for vendors, business associates or contract service providers do not apply to OPO staff, and hospitals cannot deny OPO staff access.

69.     42 C.R.F. § 482.45 provides that OPOs and hospitals enter into written agreements detailing the duties and responsibilities both parties have with regard to donation.

70.   Hospitals do not have the right to bar the designated OPO or its staff from performing their OPO federal mandate in the hospital.

71.   Defendant has at least fifteen (15) agreements with hospitals and facilities pursuant to 42 C.R.F. § 482.45, including:

a.   Midwest Eye-Banks located in Ann Arbor, Michigan and William Beaumont Hospital, a Michigan non-profit corporation, with campuses located in Royal Oak, Troy, and Grosse Pointe, Michigan.

b.   Borgess Medical Center located in Kalamazoo, Michigan.

c.   Eversight located in Ann Arbor, Michigan and Mercy Health Saint Mary's located in Grand Rapids, Michigan.

d.   Eversight located in Ann arbor, Michigan and Munson Medical Center located in Traverse City, Michigan.

e.   Eversight located in Ann Arbor, Michigan and Providence-Providence Park Hospital located in Southfield and Novi, Michigan.

f.   Eversight located in Ann Arbor, Michigan and St. John Hospital and Medical Center located in Detroit, Michigan.

g.   Eversight located in Ann Arbor, Michigan and Mercy Health Campus and Mercy Health Hackley Campus located in Muskegon, Michigan.

h.   Eversight located in Ann Arbor, Michigan and Detroit Receiving Hospital & University Health Center located in Detroit, Michigan.

i.   Eversight located in Ann Arbor, Michigan and Hurley Medical Center located in Flint, Michigan.

j.   Eversight located in Ann Arbor, Michigan and Edward W. Sparrow Hospital association, Sparrow Carson Hospital, Sparrow Clinton Hospital, Sparrow Ionia Hospital, and Sparrow Specialty Hospital.

k.   Eversight located in Ann Arbor, Michigan and Spectrum Health System located in Grand Rapids, Michigan, on behalf of itself and each of wholly-owned and/or operated subsidiaries.

l.   Eversight located in Ann Arbor, Michigan and the hospitals St. Joseph Mercy Ann Arbor and St. Joseph Mercy Livingston, located in Ypsilanti and Howell, Michigan respectively.

m.  Midwest Eye-Banks located in Ann Arbor, Michigan and Henry Ford Health Systems located in Detroit, Michigan, on behalf of its hospitals; Henry Ford Hospital, Henry Ford West Bloomfield Hospital, Henry Ford Wyandotte Hospital, Henry Ford Macomb-Warren Hospital, and Henry Ford Macomb Hospital.

n.  Midwest Eye-Banks located in Ann Arbor, Michigan and McLaren Regional Medical Center located in Flint, Michigan.

o.  Michigan Eye-Bank located in Ann Arbor, Michigan and Regents of the University of Michigan on behalf of its University of Michigan Hospitals and Health System located in Ann Arbor, Michigan.

72.  Because standard credentialing programs for vendors, business associates or contract service providers do not apply to OPO staff who require access to the hospital facility, Defendant could have reasonably accommodated Plaintiffs' religious or medical exemptions by providing PPE just as it did since the beginning of the pandemic.

73.  Not all Plaintiffs require access to healthcare facilities.

74.  Some Plaintiffs can temporarily and/or permanently work remotely.

75.  Defendant extended remote work as a religious accommodation to a Hospital Development Manager.

76.  Plaintiffs needing to visit healthcare facilities could have done so by following existing COVID-19 protocols.

77.  Plaintiff Ms. George suggested various accommodations to Defendant.  Ms. George explained that she spent "90% of [her] hospital time" at Spectrum facilities, and Spectrum took the position that she could perform her job duties without vaccination.

78.  On September 3, 2021, Defendant told Ms. George the following:

Gaining access to hospitals and facilities we serve is an essential function of your job, and it is important to note that Gift of Life Michigan serves over 170 such facilities. While you indicate a majority of your time is spent within one hospital system that may

14

allow exemptions and certain accommodations under certain circumstances, there is not a singular accommodation that would permit access to all such facilities at any given point in time, particularly if not every facility we serve has the same requirements with respect to the unvaccinated and to the extent those requirements may change over time. Our inability to properly service these facilities by not having a fully vaccinated staff puts us in a position of not being able to fulfill our mission. Thus, limiting your duties to one hospital system is not considered a reasonable accommodation under the circumstances.

79.     While "gaining access to hospitals and facilities" may be an essential function of Ms. George's job, it is absolutely false that there is not a "single accommodation that would permit access to all such facilities at any given point in time."  In fact, Defendant cannot point to any facility that Ms. George regularly visits that bans unvaccinated individuals.  Hence, Defendant's explanation is pretextual.

80.     Defendant's suggestion that there needs to be a "singular accommodation" to Plaintiffs' accommodation requests lacks legal authority. *See Ward v. McDonald*, 762 F.3d 24, 31 (D.C. Cir. 2014) ("few disabilities are amendable to one-size-fits-all accommodations").

81.     Even if, hypothetically, there was a single healthcare facility that did not permit visits by unvaccinated individuals, it would be a remarkably simple and not burdensome to have an alternate vaccinated employee service that rare facility.

82.     Ms. George attempted numerous times to engage in an interactive process with Defendant in order to explore these options.  She was always denied any sort of bilateral compromise.  On September 9, 2021, Ms. Hudson refused her calls and said, "I will communicate with you when we are ready to."

83.     On September 20, 2021, Ms. George was told the same thing.  Defendant refused to entertain her accommodation request.

84.     To add insult on top of Ms. George's injury, she learned that (a) her similarly situated colleague was granted a medical exemption to the vaccination mandate; and (b) there was a "fully remote" Hospital Donation Advocate job position listed on Defendant's hiring website that she was never offered.

85.     Rather than discuss with Ms. George whether she could transfer into the Hospital Donation Advocate position, Defendant communicated a pretextual reason for her termination.

86.     When she questioned why a host of other potential accommodations (*e.g.,* mask wearing, testing, social distancing, virtual meetings, remote work, etc.) were not reasonable, Defendant refused to engage and only responded in conclusory fashion that the requested accommodations could not be "substantiated long-term."

87.     On or about October 25, 2021, Defendant terminated all Plaintiffs except Plaintiff Trinda Martin who was terminated at a later date due to being on FMLA leave.[1]

88.     Defendant never engaged in the interactive process.

89.     Defendant did not explain to Plaintiffs why some employees were accommodated while others were denied accommodation without bilateral cooperation or an interactive process.

90.     Defendant stated that it could not identify "any other accommodations that would enable you to perform the essential functions of your job without being vaccinated in a way that does not create an undue hardship or pose a direct threat to the health and/or safety of you or others in the workplace."

**Defendant Violated EEOC Guidance**

---

[1] Plaintiff Trinda Martin's termination came shortly thereafter, as she was on a protected medical leave unrelated to the facts herein.  While on leave, Ms. Martin was informed that her religious accommodation request was denied and she was terminated the day after Thanksgiving.

91.     On March 1, 2022, the EEOC expanded its guidance on religious exemption to employer vaccine mandates under Title VII of the Civil Rights Act of 1964 ("Guidance"). This Guidance describes in greater detail the framework under which the EEOC advises employers to resolve religious accommodation requests. *See* Guidance, *supra*.

92.     The EEOC emphasizes that as a reasonable accommodation, an unvaccinated employee entering into the workplace might wear a facemask, work at a social distance from coworkers or non-employees, work a modified shift, get periodic tests for COVID-19, be given the opportunity to telework, or finally, accept a reassignment. *Id*. at K.2.

93.     The EEOC states that an employer cannot rely on speculative hardships when face with an employee's religious objection but, rather, should rely on objective information. *Id*. at L.3.

94.     The EEOC states that, in many circumstances, it may be possible to accommodate those seeking reasonable accommodations for their religious beliefs, practices, or observances without imposing an undue hardship. *Id*. at K.12.

95.     The EEOC instructs, "[i]f the employer denies the employee's proposed accommodation, the employer should explain to the employee why the preferred accommodation is not being granted." *Id*. at L.5.

96.     "[T]he definition of religion is broad and protects, beliefs, practices, and observances with which the employer may be unfamiliar." *Id*. at K.12.

97.     "The definition of 'religion' under Title VII protects both traditional and nontraditional religious beliefs, practices, or observances, including those that may be unfamiliar to employers." *Id*. at L.2.

98.     "The employer should ordinarily assume that an employee's request for religious accommodation is based on sincerely held religious belief, practice, or observance." *Id*. at K.12.

17

99.    "Employers should evaluate religious objections on an individual basis." *Id*. at L.2.

100.   The EEOC states:

> An individual's beliefs – or degree of adherence – may change over time and, therefore, an employee's newly adopted or inconsistently observed practices may nevertheless be sincerely held. An employer should not assume that an employee is insincere simply because some of the employee's practices deviate from the commonly followed tenants of the employee's religion, or because the employee adheres to some common practices but not others. *Id*. at L.2.

101.   "An employer should thoroughly consider all possible reasonable accommodations." *Id.* at K.12.

102.   In most circumstances, it is possible to accommodate religious beliefs "without imposing an undue hardship." *Id*. at L.3.

## Defendant Did Not Base Its Decision on Undue Hardship, ## Nor Could It Establish Undue Hardship

103.   Pursuant to Title VII, the prohibition against religious discrimination imposes an affirmative duty on employers to reasonably accommodate the religious observances and practices of its employees, unless the employer can demonstrate that such an accommodation would cause undue hardship to the conduct of its business. *Trans World Airlines, Inc. v. Hardison*, 432 U.S. 63, 74 (1977).

104.   "The obligation to provide religious accommodations absent undue hardship is a continuing obligation that allows for changing circumstances." Guidance at L.6.

105.   Defendant bears the burden to show "that it is unable to reasonably accommodate the employee's religious beliefs without incurring undue hardship." *McDaniel v. Essex Intern., Inc.*, 571 F.2d 338, 341 (6th Cir.1978); *see also Baz v. Walters*, 782 F.2d 701, 706 (7th Cir.1986);

*Redmond v. GAF Corp.*, 574 F.2d 897, 901 (7th Cir.1978); *EEOC v. Hacienda Hotel*, 881 F.2d 1504, 1512 (9th Cir.1989).

106.    In the instant case, Defendant cannot show undue hardship.  To date, Defendant has not stated why granting Plaintiffs an accommodation poses an undue hardship.

107.    Defendant has not explained its criteria for determining whether an accommodation poses an undue hardship.

108.    An employer does not satisfy its burden "merely by showing that an accommodation would be bothersome to administer." *Draper v. United States Pipe & Foundry Co.*, 527 F.2d 515, 520 (6th Cir. 1975).

109.    Without a proffered explanation as to why Defendant would endure undue hardship to accommodate Plaintiffs individual, Defendant relies on hypothetical hardships by default.

110.    "A claim of undue hardship cannot be supported by merely conceivable or hypothetical hardships; instead, it must be supported by proof of actual imposition on co-workers or disruption of the work routine." *Towney Eng'g & Mfg. Co.*, 859 F.2d at 615 (9th Cir. 1988).

111.    "An Employer cannot rely on speculative or hypothetical hardship when faced with an employee's religious objection but, rather, should rely on objective information."  Guidance at L.3.

112.    Defendant's actions demonstrate a motive to avoid granting religious accommodations.  "[A]n employer who acts with the motive of avoiding accommodation may violate Title VII even if [it] has no more than an unsubstantiated suspicion that accommodation would be needed." *Avercrombie & Fitch Stores, Inc.*, 575 U.S. 768, 773, 135 S. Ct. 2028, 2033, 192 L. Ed. 2d 35 (2015).

**COUNT I**
**Violation of Title VII, 42 U.S.C. § 2000e, *et seq*.**
**Religious Discrimination – Failure to Accommodate**

113.    Plaintiffs restate the foregoing paragraphs as set forth fully herein.

114.    At all times relevant hereto, Plaintiffs were employees and Defendant was their employer for the purposes of 42 U.S.C. § 2000e, *et seq*.

115.    Title VII of the Civil Rights act of 1964, 42 U.S.C. § 2000e *et seq*., makes it unlawful for an employer to fail or refuse to reasonably accommodate the religious beliefs and practices of an employee or prospective employee.

116.    Title VII prohibits an employer from discriminating against an employee "because of such individual's... religion." 42 U.S.C. § 2000e-2(a)(1).

117.    This "includes all aspects of religious observance and practice, as well as belief, unless an employer demonstrates that [it] is unable to reasonably accommodate an employee's... religious observance or practice without undue hardship on the conduct of the employer's business." *Id*. § 2000e(j).

118.    After receiving an accommodation request, "the employer is obligated by law to engage in interactive process – a meaningful dialogue with the employee[.]" *EEOC v. Chevron Phillips Chem. Co.*, 570 F.3d 606, 621 (5th Cir. 2009).

119.    The employer must act in "good faith," *Id*., and the employee must "make a good faith attempt to satisfy his needs through means offered by the employer," *Brener v. Diagnostic Ctr. Hosp.*, 671 F.2d 141, 146 (5th Cir. 1982)

120.    Title VII makes it unlawful for an employer to retaliate against an employee who engaged in protected activity.

121. The value of religious freedom has been "zealously protected, sometimes even at the expense of other interests of admittedly high social importance." *Wisconsin v. Yoder*, 406 U.S. 205, 214 (1972).

122. Plaintiffs hold sincere religious beliefs that preclude them from receiving a COVID-19 vaccine.

123. Plaintiffs informed Defendant of those beliefs and requested religious accommodations from the vaccine mandate.

124. Defendant refused to engage in the interactive process with Plaintiffs regarding their religious accommodation requests and instead effectively terminated each of them by placing Plaintiffs on indefinite unpaid leave

125. Under Title VII, Plaintiffs can establish a *prima facie* case of religious discrimination based on a failure to accommodate by showing: (1) they have *bona fide* religious beliefs that conflict with an employment requirement; (2) about which they informed the [Defendant]; and (3) they suffered an adverse employment action for failing to comply with the conflicting employment requirement. *Ansonia Bd. of Educ. v. Philbrook*, 479 U.S. 60, 69 (1986).

126. Defendant concedes the first and second prongs in the August 27, 2021, response that accepted Plaintiffs' religious beliefs and purportedly granted them an "accommodation." As such, defendant has acknowledged that Plaintiffs have valid, sincerely held religious beliefs.

127. Multiple accommodations could have been offered to Plaintiffs, although some of them already worked remotely and required no accommodation other than not having to be vaccinated.

128. For Plaintiffs who worked in the office or onsite at healthcare facilities, accommodations abound. They include mask wearing and periodic testing for COVID-19 – the

very same accommodations being offered to virtually every public and private employee in the State of Michigan.

129.    Defendant would not suffer undue hardship by granting Plaintiffs an accommodation. 42 U.S.C. § 2000e(j).

130.    The issue became moot when Defendant failed to engage each employee in "a meaningful dialogue" about the accommodation request and learn whether an acceptable accommodation would impose undue hardship. *EEOC v. Chevron Phillips Chem. Co.*, 570 F.3d 606, 621 (5th Cir. 2009).

131.    Instead, Defendant announced a one-size-fits all approach to accommodation that deprived Plaintiffs of the conversation necessary to discover what accommodations were possible. *Bultemeyer v. Fort Wayne Cmty. Schs.*, 100 F.3d 1281, 1285 (7th Cir. 1996) ("courts should look for signs of failure to participate in good faith or failure by one of the parties to help the other party determine what specific accommodations are necessary" and "[a] party that fails to communicate... may also be acting in bad faith").

132.    Plaintiffs suffered adverse employment actions by being placed on involuntary unpaid leave indefinitely, losing their health insurance, and then being unceremoniously terminated. Involuntary indefinite unpaid leave cannot possibly be reasonable because a "[r]easonable accommodation is by its terms most logically construed as that which presently, or in the immediate future, enables the employee to perform the essential functions of the job in question." *Myers v. Hose*, 50 F.3d 278, 283 (4th Cir. 1995).

133.    Irrespective of the interactive process, Defendant failed to provide Plaintiffs with reasonable accommodations for their religious beliefs.

134.     As a result, all Plaintiffs were left in the dark regarding (a) what about their accommodation request posed an undue hardship; and (b) why they individually could not be accommodated.

135.     Defendant thereby discriminated against Plaintiffs because of their religious beliefs.

136.     Defendant's failure to provide religious accommodations has harmed and will continue to harm Plaintiffs.

137.     As a direct and proximate result of Defendant's violation of Title VII Plaintiffs have suffered feelings of depression, emotional and physical distress, mental and physical anguish, loss of reputation, humiliation and embarrassment, and the physical effects associated therewith, and will so suffer in the future.

138.     As a further direct and proximate result of Defendant's violation of Title VII, Plaintiffs have been denied employment and placed in financial distress and have suffered a loss of earnings and benefits, and a loss of and impairment of their earning capacity and ability to work and will so suffer in the future; they have been required to employ the services of an attorney to bring this lawsuit and will suffer additional damages in the future.

139.     By failing to engage in the interactive process or offer any reasonable accommodation, Defendant's discriminatory actions were intentional and/or reckless and in violation of Title VII.

## COUNT II
### Violation of Title VII, 42 U.S.C. § 2000e, *et seq*.
### Religious Discrimination – Retaliation

140.     Plaintiffs restate the foregoing paragraphs as set forth fully herein.

141.    At all times relevant hereto, Plaintiffs were employees and Defendant was their employer for the purposes of 42 U.S.C. § 2000e, *et seq*.

142.    Title VII prohibits an employer from discriminating against an employee "because of such individual's . . . religion." 42 U.S.C. § 2000e-2(a)(1). This "includes all aspects of religious observance and practice, as well as belief, unless an employer demonstrates that [it] is unable to reasonably accommodate an employee's . . . religious observance or practice without undue hardship on the conduct of the employer's business." *Id.* § 2000e(j).

143.    Pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2(a)(1), it is unlawful for an employer: (1) to fail or refuse to hire or to discharge any individual, or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's... religion; or (2) to limit, segregate, or classify his employees or applicants for employment in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individuals... religion[.]"

144.    Defendant's mandatory vaccination policy evades any sort of bilateral cooperation or interactive process, and it instead granted a false accommodation of indefinite unpaid leave of absence—which is not an accommodation at all. *See Ansonia Bd. of Educ. v. Philbrook*, 479 U.S. 60, 69 (1986) (stating that, consistent with the goals expressed in the legislative history of Title VII's religious accommodation provision, "courts have noted that bilateral cooperation is appropriate in the search for an acceptable reconciliation of the needs of the employee's religion and the exigencies of the employer's business"). Simply by failing to engage with Plaintiffs as to the possible reasonable accommodations, Defendant has violated the law.

145.    Plaintiffs engaged in protected activity when they requested religious accommodations from Defendant's vaccine mandate.

146.    Defendant responded almost immediately by announcing that it would effectively terminate their employment.  This was so even though Defendant conceded that many of the requests for religious accommodation are legitimate by "granting" those requests.

147.    Defendant's response to Plaintiffs' protected activity with a draconian threat of years of unpaid leave is an adverse employment action intended to force employees to forgo their religious beliefs and receive the COVID-19 vaccine. Defendant chose to retaliate by giving the employees the false choice between vaccination and effective termination.

148.    Defendant retaliated against Plaintiffs when it responded to requests for a religious or medical accommodations by placing each employee who requested one on involuntary indefinite unpaid leave, with benefits soon being stripped away, and then formally terminating them by October 26, 2021.

149.    Plaintiffs' religious beliefs and protected activity were the causes of Defendant's adverse employment action. Indeed, Defendant's derisive view of employees with religious beliefs has been documented. Defendant did not bother engaging in an interactive process with accommodation seekers because it never intended to provide them with a reasonable accommodation.

150.    By retaliating against Plaintiffs for engaging in protected activity, Defendant has violated Title VII.  This violation has harmed and continues to harm Plaintiffs.

**COUNT III**
**Violation of the ADA, 42 U.S.C. § 12112**
**ADA Confidentiality**

156.    Plaintiffs restate the foregoing paragraphs as if set forth fully herein.

157.    Plaintiffs engaged in protected activity when requesting an accommodation from the COVID-19 vaccine.

158.    Defendant responded by distributing a list of Plaintiffs' names and unvaccinated status to various healthcare facilities without consent.

159.    The EEOC emphasizes that the ADA requires an employer to maintain the confidentiality of employee medical information. Although the EEO laws do not prevent employers from requiring employees to provide documentation or other confirmation of vaccination, this information, like all medical information, must be kept confidential and stored separately from the employee's personnel files under the ADA. Guidance at K.4.

160.    The ADA requires employers to treat any medical information obtained from a disability-related inquiry or medical examination (including medical information from voluntary health or wellness programs), as well as any medical information voluntarily disclosed by an employee, as a confidential medical record. 29 C.R.F. § 1630.14(2).

161.    Employers may share such information only in limited circumstances with supervisors, managers, first aid and safety personnel, and government officials investigating compliance with the ADA. 42 U.S.C. §§ 12112(d)(3)(B), (4)(C); 29 C.R.F. § 1630.14(d)(4).

162.    Defendant violated ADA confidentiality obligations by distributing their names and unvaccinated status to various healthcare facilities without consent.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs respectfully requests that this Court enter the following relief:

a.    Declare that Defendant has violated Title VII by failing to engage in the interactive process in response to requests for accommodations to its COVID-19 vaccine mandate.

b.     Declare that Defendant has violated Title VII by discriminating against its employees by failing to provide reasonable accommodations to its COVID-19 vaccine mandate.

c.     Declare that Defendant has violated Title VII by retaliating against employees who engaged in protected activity.

d.     Award Plaintiffs damages, including back pay, reinstatement or front pay, pre-judgment and post-judgment interest, punitive damages, and compensatory damages.

e.     Award Plaintiffs reasonable attorneys' fees and costs.

f.     Grant any other relief that the Court deems just, proper, and equitable.

g.     Pursuant to Federal Rule of Civil Procedure 38, Plaintiffs demand a jury trial on all issues upon which there is a federal right to a jury trial.

Respectfully submitted,

HURWITZ LAW PLLC

*/s/ Noah S. Hurwitz*
Noah Hurwitz (P74063)
*Attorney for Plaintiffs*
614 Detroit St. STE 125
Ann Arbor, MI 48104
(844) 487-9489
Dated: September 23, 2022                    noah@hurwitzlaw.com

**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

KARA GEORGE, TRINDA MARTIN,
BRENNAN POWERS, and
ELIZABETH STOUT,

                                 Case No.

        Plaintiffs,

v.                                Hon.

ORGAN PROCUREMENT AGENCY OF
MICHIGAN d/b/a GIFT OF LIFE MICHIGAN,

        Defendant.

---

Noah S. Hurwitz (P74063)
Grant M. Vlahopoulos (P85633)
Kara F. Krause (P85487)
Brendan J. Childress (P85638)
HURWITZ LAW PLLC
*Attorneys for Plaintiff*
617 Detroit St., STE. 125
Ann Arbor, MI 48104
(844) 847-9489
noah@hurwitzlaw.com
grant@hurwitzlaw.com
kara@hurwitzlaw.com
brendan@hurwitzlaw.com

---

## <u>DEMAND FOR TRIAL BY JURY</u>

      Plaintiffs Kara George, Trinda Martin, Brenan Powers, and Elizabeth Stout, by and through

their attorneys HURWITZ LAW, PLLC, hereby demand a trial by jury, for all issues so triable.

                                Respectfully submitted,

                                HURWITZ LAW PLLC

                                /s/ Noah S. Hurwitz
                                Noah Hurwitz (P74063)
                                *Attorney for Plaintiffs*
                                614 Detroit St. STE 125
                                Ann Arbor, MI 48104

(844) 487-9489
Dated: September 23, 2022                    noah@hurwitzlaw.com